UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WANDA HARRIS,                          ) Case No. EDCV 05-0421-RC
                                       )
                    Plaintiff,         )
                                       )
vs.                                    ) OPINION AND ORDER
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of the Social             )
Security Administration,               )
                                       )
                    Defendant.         )
_____)

        Plaintiff Wanda Harris filed a complaint on May 24, 2005, seeking
review of the Commissioner's decision denying her application for
disability benefits.  The Commissioner answered the complaint on
October 25, 2005, and the parties filed a joint stipulation on
December 12, 2005.


                              **BACKGROUND**

                                  **I**

        On February 5, 2003, plaintiff applied for disability benefits
under the Supplemental Security Income ("SSI") program of Title XVI of
the Social Security Act ("the Act"), claiming an inability to work

since February 28, 2001, due to severe back pain.  Certified
Administrative Record ("A.R.") 62-64, 100.[1]  The plaintiff's
application was denied on April 3, 2003, and was denied again on
August 4, 2003, following reconsideration.  A.R. 29-37.  The plaintiff
then requested an administrative hearing, which was held before
Administrative Law Judge Michael D. Tucevich ("the ALJ") on August 17,
2004.  A.R. 38, 282-91.  On September 10, 2004, the ALJ issued a
decision finding plaintiff is not disabled.  A.R. 7-16.  The plaintiff
appealed this decision to the Appeals Council, which denied review on
March 25, 2005.  A.R. 3-6.

## II

The plaintiff, who was born on February 17, 1961, is currently 45
years old.  A.R. 58, 61-62.  She has a high school education and has
previously worked as a certified nurse's assistant and Goodwill
contribution processor.  A.R. 72, 77, 84-91, 101, 106.

On February 28 or March 2, 2000, plaintiff injured her lower back
while working at Goodwill.  A.R. 186, 271.  On March 8, 2000,
plaintiff was examined at St. Bernardine Medical Center, where she was
diagnosed with a low back strain and treated with physical therapy,
which she received until May 17, 2000.  A.R. 135-49.  A lumbar spine
MRI taken April 6, 2000, revealed minimal posterior central disc
bulges at L4-5 and L5-S1, causing no spinal stenosis.  A.R. 195, 238.

---

[1]  The plaintiff previously applied for SSI benefits on
May 29, 2001; however, this application was denied on
September 26, 2001, and was not further pursued.  A.R. 10, 25-28,
57-60.

2

On April 20, 2000, David Stokesbary, M.D., an orthopedic surgeon, examined plaintiff, diagnosed her with lumbar spine musculoligamentous traction injuries and a cervico-dorso spine strain/sprain, and opined she was temporarily totally disabled.  A.R. 271-76.  Nerve conduction studies, electromyographic studies, and reflex studies of both legs done August 14, 2000, were normal.  A.R. 260-62.  Dr. Stokesbary continued to treat plaintiff until November 3, 2000, when he concluded plaintiff was permanent and stationary and should be prophylactically precluded from lifting more than 25 pounds, frequent or repetitive bending or stooping, and prolonged sitting, standing, or walking of more than an hour at a time.  A.R. 242-47.

On January 29, 2001, George S. Watkin, M.D., examined plaintiff and diagnosed her with a lumbar spine strain/sprain superimposed over minimal disc bulges at L4-L5 and L5-S1 and secondary neck pain.  A.R. 185-94.  Cervical, thoracic, and lumbar spine and pelvic x-rays were normal.  A.R. 191.  Indeed, Dr. Watkin stated plaintiff's "subjective complaints were far in excess of her objective findings on examination."  A.R. 191-92.  Dr. Watkin also concluded plaintiff was permanent and stationary and opined she should be prophylactically precluded from very heavy work;[2] however, Dr. Watkin further opined

---

[2] Under the version of California's workers' compensation guidelines then in effect, a disability precluding "very heavy work" contemplates the claimant "has lost approximately 25% of pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling and climbing or other activities involving comparable physical effort."  Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-14 (Labor Code of California, April 1997).  The Schedule for Rating Permanent Disabilities has been revised effective January 2005.

1   that the work restrictions Dr. Stokesbary recommended are "in excess
2   of the [plaintiff's] needs."  Id.

4        On March 21, 2003, Bunsri T. Sophon, M.D., examined plaintiff and
5   concluded she had no orthopedic diagnosis and no functional
6   limitations.  A.R. 216-20.  Lumbosacral spine x-rays were within
7   normal limits.  A.R. 220.

9        On April 1, 2003, a nontreating, nonexamining physician opined
10  plaintiff can occasionally lift and/or carry up to 20 pounds, climb,
11  balance, stoop, kneel, crouch or crawl, frequently lift and/or carry
12  up to 10 pounds, stand and/or walk for at least 2 hours in an 8-hour
13  day, and cannot push or pull with her legs, use vibrating tools, or be
14  exposed to hazards.  A.R. 208-15.

16       Medical expert Minh Vu, M.D., testified at the administrative
17  hearing that plaintiff has lumbar spine degenerative joint disease and
18  cervical spine pain and, between February 2000, and March 31, 2003,
19  plaintiff was limited to medium work with only occasional crouching,
20  bending or other back movements; however, since March 31, 2003,
21  plaintiff has no limitations.  A.R. 284-88.

23                              **DISCUSSION**
24                                 **III**
25       The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
26  review the Commissioner's decision denying plaintiff disability
27  benefits to determine if her findings are supported by substantial
28  evidence and whether the Commissioner used the proper legal standards

                                    4

in reaching her decision.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th

Cir. 1999); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998).


     "In determining whether the Commissioner's findings are supported

by substantial evidence, [this Court] must review the administrative

record as a whole, weighing both the evidence that supports and the

evidence that detracts from the Commissioner's conclusion." <u>Reddick</u>,

157 F.3d at 720; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir.

2001).  "If the evidence can reasonably support either affirming or

reversing the [Commissioner's] conclusion, the court may not

substitute its judgment for that of the [Commissioner]." <u>Reddick</u>, 157

F.3d at 720-21; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1075 (9th Cir.

2002).


     The claimant is "disabled" for the purpose of receiving benefits

under the Act if she is unable to engage in any substantial gainful

activity due to an impairment which has lasted, or is expected to

last, for a continuous period of at least twelve months.  42 U.S.C. §

1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

burden of establishing a prima facie case of disability." <u>Roberts v.</u>

<u>Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122

(1996); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996).


     The Commissioner promulgated regulations establishing a five-step

sequential evaluation process for the ALJ to follow in a disability

case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ must determine

whether the claimant is currently engaged in substantial gainful

activity.  20 C.F.R. § 416.920(b).  If not, in the **Second Step**, the

ALJ must determine whether the claimant has a severe impairment or
combination of impairments significantly limiting her from performing
basic work activities.  20 C.F.R. § 416.920(c).  If so, in the **Third
Step**, the ALJ must determine whether the claimant has an impairment or
combination of impairments that meets or equals the requirements of
the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P,
App. 1.  20 C.F.R. § 416.920(d).  If not, in the **Fourth Step**, the ALJ
must determine whether the claimant has sufficient residual functional
capacity despite the impairment or various limitations to perform her
past work.  20 C.F.R. § 416.920(f).  If not, in **Step Five**, the burden
shifts to the Commissioner to show the claimant can perform other work
that exists in significant numbers in the national economy.  20 C.F.R.
§ 416.920(g).

Applying the five-step sequential evaluation process, the ALJ
found plaintiff has not engaged in substantial gainful activity since
the alleged onset of disability.  (Step One).  The ALJ then found
plaintiff has "sprain/strain of the lumbar spine, minimal disc bulges
at L4-5 and L5-S1, and chronic low back and neck pain, which are
'severe' impairments[,]" (Step Two); however, she does not have an
impairment or combination of impairments that meets or equals a
Listing.  (Step Three).  The ALJ next determined plaintiff is able to
perform her past relevant work; therefore, she is not disabled.  (Step
Four).  Alternately, the ALJ found plaintiff is not disabled under
Rule 203.29 of the Medical-Vocational Guidelines.  (Step Five).

### IV

A claimant's residual functional capacity ("RFC") is what she can

6

1   still do despite her physical, mental, nonexertional, and other

2   limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001);

3   Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

4   the ALJ found plaintiff retains the RFC to perform medium work.[3]  A.R.

5   15.  However, plaintiff contends the ALJ's RFC determination is not

6   supported by substantial evidence because the ALJ did not properly

7   consider a letter dated September 14, 2001, from her sister, Myra

8   Johnson, who wrote:

9

10       [plaintiff] is not able to perform daily house duties that

11       you and I are able [to] carry out on a daily basis[.]  She

12       is not able to sit or stand long period[s] of time[.]  She

13       cannot bend over to simply make her own bed[.]  I assist her

14       on a daily basis to clean her house[,] do her laundry and

15       . . . her grocery shoping [sic].

16

17  A.R. 96.  There is no merit to plaintiff's claim.

18

19       "Lay testimony as to a claimant's symptoms is competent evidence

20  that an ALJ must take into account, unless he or she expressly

21  determines to disregard such testimony and gives reasons germane to

22  each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th

23  Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

24  Here, the ALJ explained his reasons for not giving Johnson's statement

25

26

27       [3]  Under Social Security regulations, "[m]edium work
    involves lifting no more than 50 pounds at a time with frequent
    lifting or carrying of objects weighing up to 25 pounds."  20

28  C.F.R. § 416.967(c).

1    much weight, stating:

2

3        While the undersigned does not doubt that Ms. Johnson is

4        motivated by a genuine concern for the [plaintiff], her

5        perceptions of the [plaintiff's] limitations are adversely

6        influenced by that very concern for the [plaintiff's] well

7        being.  Close relatives most often accept, without critical

8        and objective reasoning, the subjective complaints of loved

9        ones.

10

11   A.R. 14.  Thus, the ALJ rejected Johnson's letter because it was

12   primarily based on plaintiff's subjective complaints, and the ALJ had

13   determined plaintiff was "not credible" based upon "all the evidence

14   contained in the file[.]"[4]  A.R. 12, 14-15.  This is an appropriate

15   reason for rejecting Johnson's letter, <u>see</u> <u>Lewis</u>, 236 F.3d at 511

16   ("One reason for which an ALJ may discount lay testimony is that it

17   conflicts with medical evidence."); <u>Vincent v. Heckler</u>, 739 F.2d 1393,

18   1395 (9th Cir. 1984) (per curiam) ("The ALJ properly discounted lay

19   testimony that conflicted with the available medical evidence.").

20   Moreover, the medical evidence from 2003 and 2004 is considerably more

21   current than Johnson's letter and supports the ALJ's conclusion that

22   Johnson's letter conflicts with the medical evidence.

23

24                                    **V**

25        "To determine whether a claimant has the [RFC] to perform [her]

26   past relevant work, the [ALJ] must ascertain the demands of the

27   _____

28        [4]  The plaintiff does not challenge the ALJ's finding that
     she is "not credible."

8

1  claimant's former work and then compare the demands with [her] present

2  capacity." Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986)

3  (footnote added); Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir.

4  1990).  A plaintiff will be found "not disabled" when it is determined

5  she retains the RFC to perform:  "1.  The actual functional demands

6  and job duties of a particular past relevant job; or [¶] 2.  The

7  functional demands and job duties of the occupation as generally

8  required by employers throughout the national economy." Pinto v.

9  Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61, 1982

10  WL 31387 *2 (S.S.A.)); see also Lewis v. Barnhart, 281 F.3d 1081, 1083

11  (9th Cir. 2002) ("A claimant must be able to perform her past relevant

12  work either as actually performed or as generally performed in the

13  national economy.").

14

15      Here, the vocational expert Gloria Lasoff testified that

16  plaintiff's past relevant work as a certified nursing assistant was

17  "semiskilled, medium work" and her past relevant work as a Goodwill

18  contribution processor "is categorized as skilled light although the

19  way it's actually performed is more within the semiskilled, medium

20  category."  A.R. 289.[5]  Based on this testimony, the ALJ found

21  plaintiff, who can perform medium work, can perform her past relevant

22  work as a certified nursing assistant and a Goodwill contribution

23  processor.  A.R. 14-16.  However, plaintiff contends this finding is

24  not supported by substantial evidence because the ALJ did not specify

25  which of the limitations Dr. Minh identified were included in the

26  hypothetical question to the vocational expert, and the hypothetical

27  ────────────────

28      [5]  The plaintiff does not challenge these assessments of her
    past relevant work.

9

1  question was, thus, incomplete.  The plaintiff is in error.

2

3       At the administrative hearing, Dr. Minh testified that between

4  February 2000, and March 31, 2003, plaintiff was limited to medium

5  work with only occasional crouching, bending or other back movements;

6  however, plaintiff had no limitations after March 31, 2003.  A.R. 284-

7  88.  Following that testimony, which the vocational expert heard, the

8  ALJ then examined the vocational expert ("VE"), as follows:

9

10 [ALJ]:     Okay.  I'd like you to consider the functional

11            limitations testified to by the medical expert

12            this morning.

13 [VE]:      Um-hum.

14 [ALJ]:     I'd ask you to assume . . . for the purpose of

15            this hypothetical . . . the same vocational

16            profile you just outlined.  If I were to assume

17            **all** those functional limitations [set forth by Dr.

18            Minh] . . . would that person be able to perform

19            any of the past relevant work?

20 [VE]:      Yes, Your Honor.

21 [ALJ]:     And which would that be specifically?

22 [VE]:      Either as actually performed or customarily

23            performed.[6]

24  _____

25       [6]  The plaintiff contends the vocational expert's final
    response "is incomplete as to what the vocational expert's
26  response was to the ALJ's question about what past relevant work
    was performable."  Jt. Stip. at 10:1-9.  The Court disagrees.
27  Here, the vocational expert clearly testified plaintiff could
    perform both of her prior jobs (past relevant work) either as
28  previously performed or as was customarily performed.  A.R. 289-

                                   10

A.R. 290 (footnote added, emphasis added).  The plaintiff also claims
the ALJ's initial reference to the medical expert's testimony is
unclear,[7] Jt. Stip. at 7:1-2, and ambiguity also exists in the first
inquiry to the vocational expert.  That is not so.  "In short, all
means all."  Knott v. McDonald's Corp., 147 F.3d 1065, 1067 (9th Cir.
1998).  Thus, plaintiff has not shown the ALJ's hypothetical question
to the vocational expert was in any manner incomplete.  See Thomas v.
Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)(ALJ's hypothetical
question to vocational expert adequately incorporated limitations
medical expert identified when "the ALJ directed the VE to credit
fully [medical expert's testimony], which the VE had just heard.").
To the contrary, the vocational expert's testimony that plaintiff can
perform her past relevant work as a nursing assistant and a Goodwill
contribution processor constitutes substantial evidence to support the
ALJ's Step Four determination, Roberts, 66 F.3d at 184; Tylitzki v.
Shalala, 999 F.2d 1411, 1415 (9th Cir. 1993), and plaintiff has not

---

90.  There is no ambiguity here, and the ALJ did not fail to
fully and fairly develop the record.  Mayes v. Massanari, 276
F.3d 453, 460-61 (9th Cir. 2001).

    [7]  The genesis of plaintiff's claim is that although Dr.
Minh testified that between February 2000, and March 31, 2003,
plaintiff was able to perform medium work with only occasional
crouching, bending or other back movements, the ALJ found, based
on Dr. Minh's testimony, that plaintiff "retains the [RFC] to
perform [the full range of] medium work."  A.R. 14-15.  However,
any error the ALJ may have committed in finding plaintiff can
perform the full range of medium work was harmless since the
ALJ's hypothetical to the vocational expert posited *all* of the
limitations Dr. Minh set forth, and the vocational expert's
response to that hypothetical was the basis of the ALJ's
determination that plaintiff can perform her past relevant work.
See Burch, 400 F.3d at 679 ("A decision of the ALJ will not be
reversed for errors that are harmless.").

1 | her burden of proving she is unable to perform her past relevant work.
2 | Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 511 (9th
3 | Cir. 1987).

4 |

5 | **ORDER**

6 |     IT IS ORDERED that: (1) plaintiff's request for relief is denied;
7 | and (2) the Commissioner's decision is affirmed, and Judgment shall be
8 | entered in favor of defendant.

9 |

10 | DATE:   August 14, 2006            /s/ Rosalyn M. Chapman
                                        ROSALYN M. CHAPMAN
11 |                                  UNITED STATES MAGISTRATE JUDGE

12 | R&R\05-0421.MDO
     8/11/06